**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THE SIDING AND INSULATION CO., | ) | CASE NO: 1:11-CV-01060 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| ALCO VENDING, INC., | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **(Doc. No. 43)** |

        This case is before the undersigned United States Magistrate Judge upon

referral for the preparation of a Report and Recommendation on the motion for

summary judgment filed by Defendant Alco Vending, Inc. ("Alco").  (Doc. No. 43.)  This

is a case wherein Plaintiff The Siding and Insulation Co. ("the Company") asserts an

individual claim and seeks to assert claims on behalf of a putative class for alleged

receipt of unsolicited faxes from Alco in violation of the Telephone Consumer Protection

Act ("TCPA").  Plaintiff asserts claims for statutory damages pursuant to the TCPA

(Count I) and a claim for conversion (Count II).  For the reasons set forth below, the

Magistrate Judge recommends that Alco's motion for summary judgment be

GRANTED.

**I.**

        **A.      Factual Background**

        Alco is a vending machine company that installs and stocks vending machines

for its customers.  (Summary Judgment Motion at 3, Doc. No. 43 at 3.)  The Company

is a home improvement contractor that specializes in siding, insulation, roofing,

windows, and doors.  (*Id.*)  In October 2005, Richard Gajdos ("Gajdos"), president of

Alco at the time, contracted with Business to Business Solutions ("B2B") to transmit facsimiles advertising Alco's services. (Deposition of Richard Gajdos ("Gajdos Dep.") at 21-22, Doc. No. 43-1 at 6.) B2B was a fax advertising broadcaster operated by Caroline Abraham ("Abraham") from 2004 to 2007. (Deposition of Caroline Abraham (Sarris) ("Sarris C. Abraham Dep.") at 12-16, Doc. No. 43-5 at 5-6.) B2B worked with a Romanian company called Macaw. (*Id.*)

One of Macaw's salespersons called himself Kevin Wilson ("Wilson"). (Deposition of Caroline Abraham (Alco) ("Alco C. Abraham Dep.") at 22, Doc. No. 43-6 at 7.) On or about October 21, 2005, Wilson sent Gajdos a form seeking information about Alco's business to include in the fax advertising. (Alco C. Abraham Dep. at 93, Doc. No. 43-6 at 24; Free "Ad Details" Form, Doc. No. 43-7.) Gajdos completed the form and returned it to B2B, listing Alco's contact information and three "selling points" for B2B to include in the ad. (Gajdos Dep. at 61-62, Doc. No. 43-1 at 16, Ex. 14.) B2B prepared sample advertisements, which it sent to Gajdos for review. (*Id.* at 21; Sample Ads, B2B0-21 and B2B24-24, Doc. No. 43-8.) Each sample ad that was sent to Gajdos included the following language:

> This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294564, which is solely responsible for its contents and destinations.

(Sample Ads, B2B20-21 and B2B24-25, Doc. No. 43-8.).

According to Plaintiff's expert, Robert Biggerstaff, the first fax campaign occurred on November 2, 2005, and involved 775 attempts, 523 of which were successful. (Expert Report of Robert Biggerstaff ("Biggerstaff Report") at ¶ 18, Doc. No. 39-5 at 3.) The second fax campaign also occurred on November 2, 2005, and involved 4,390

attempts, 2,842 of which were successful.  (*Id.* at ¶ 19.)  The third fax campaign

occurred on July 10, 2006, and involved 5,357 attempts, 3,690 of which were

successful.  (*Id.* at ¶ 20.)  Gajdos testified that B2B never sent Alco a fax, email, or

other written or oral communication confirming that it had faxed Alco's advertisements,

the number of transmissions, or where or to whom Macaw sent the faxes.  (Gajdos

Dep. at 23-24, Doc. No. 43-1 at 6.)  According to Gajdos, Alco did not select any of the

specific fax destinations and never saw the list of B2B/Macaw's fax recipients.  (*Id.* at

22-23.)  To perform the Alco fax broadcasts, B2B/Macaw did not use any of Alco's

equipment or employees.  (Alco C. Abraham Dep. at 95-97, Doc. No. 43-6 at 25.)

Gajdos estimated that he had approximately six to ten phone conversations with

Wilson regarding the advertisements and the faxing campaigns.  (Gajdos Dep. at 28,

Doc. No. 43-1 at 7.)  Gajdos testified that during their conversations, Wilson assured

Gajdos that B2B would only send faxes to persons who were on B2B's client list and

who had authorized B2B to send fax advertisements.  (*Id.* at 23-24.)  Gajdos testified

that Wilson assured him that "it was 100 percent legal, and that [B2B] had a full and

open relationship with all the faxes they were sending out."  (*Id.* at 24-26.)  Consistent

with Gajdos's recall of Wilson's representations, one of the fax advertisements allegedly

sent to the Company included the following language:

> Advertising stimulates the economy.  We will only send faxes to parties who
> wish to receive them.  If you, or someone acting in your behalf, did not request
> or allow us, our agents, or our customers to send faxes to this number, this
> message was sent in error, and we apologize.

(Plaintiff's Complaint, Doc. No. 1-1 at 2.)

On at least three occasions in 2006, Alco received letters from attorneys stating that

-3-

their clients had received unsolicited fax advertisements from Alco.  (Exhibit Robert Willis Letter March 20, 2006, Doc. No. 43-11; Exhibit Joseph Campoli Letter April 25, 2006, Doc. No. 43-12; Exhibit Robert Willis Letter July 21, 2006, Doc. No. 43-13.)  Gajdos testified that when claims of unsolicited faxes were made to Alco, Alco immediately contacted B2B to handle the complaints.  (Gajdos Dep. at 56-57, Doc. No. 43-1 at 14-15.)  B2B in turn sent letters to the attorneys asking them to "leave [B2B's] customers alone."  (Alco C. Abraham Dep. at 38-39, Doc. No. 43-6 at 11.)  In one of the letters B2B sent to an attorney representing one of the fax recipients, a copy of which was also provided to Alco, B2B claimed:

> Someone using the business phone of fax recipients supplied the fax number and permission to send faxes.  Moreover, they did not request that we discontinue sending faxes despite our sending at least two previous faxes offering opportunities to do so using the toll free "Remove" number.

(Exhibit Letter to Robert Willis B2B65-67, Doc. No. 43-2 at 2.)  Furthermore, B2B provided Alco with a "'To Whom It May Concern' letter to bring to court," which B2B claimed exonerated Alco.  (Exhibit Vasile Adrian To Whom It May Concern Letter B2B70, Doc. No. 43-10.)  B2B also offered to pay all or part of any award against Alco in the event Alco lost any lawsuit regarding the faxes.  (Exhibit Adrian Letter to Gajdos B2B50, Doc. No. 43-9.)  Specifically, B2B provided: "If you do go to court and lose because of faxes that we sent, we will pay part, or all, of the award against you."  (*Id.*)

## B. Procedural Background

On May 24, 2011, the Company filed suit against Alco on behalf of itself and other persons similarly situated, alleging that Alco: (1) sent unsolicited facsimile advertisements to the Company and more than 39 other recipients without first

-4-

receiving the recipients' express permission or invitation, in violation of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Plaintiff's Complaint at Count I, Doc. No. 1 at 3-8); and (2) improperly converted to Alco's own use the fax machines, toner, paper, and employee time of the fax recipients, in violation of the common law of conversion (Plaintiff's Complaint at Count II, Doc. No. 1 at 8-10).  On October 28, 2013, Alco filed a motion for summary judgment.  (Summary Judgment Motion, Doc. No. 43.)  On December 9, 2013, the Company filed a response to Alco's motion.  (Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition"), Doc. No. 50.)  On December 23, 2013, Alco filed a reply to the Company's response.  (Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Doc. No. 53.)

## II.

Here, Alco argues that it is entitled to summary judgment on the Company's claim that Alco violated the TCPA.  Alco's arguments are two-fold.  First, it argues that Alco cannot be held strictly liable for B2B's act of sending unauthorized faxes solely because Alco's services were advertised on the faxes.  Second, it argues that the facts are insufficient to establish Alco's liability for B2B's sending of the faxes under the federal common law of agency.  Alco maintains that it never approved, authorized, or agreed to have B2B send unsolicited faxes.

The Company argues that Alco is strictly liable as the "sender" of the fax advertisements under the TCPA, because its services are the subject of the advertisements.  Further, the Company contends that "[a]t a minimum, there is a disputed issue of fact as to whether the faxes were sent 'on behalf of' Defendant."

-5-

(Plaintiff's Opposition at 8, Doc. No. 50 at 8.)  According to the Company, even if Alco is not strictly liable for violations of the TCPA, Alco can be held vicariously liable for B2B's sending of the faxes under federal common law principles of agency.

The Court will address each argument in due course.

### A.    Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence of specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The trial court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th

-6-

Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party.  *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  However, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Id.* at 251.

When evaluating cross-motions for summary judgment, the court is obligated to analyze each motion on its own merits and view the facts and inferences in the light most favorable to the nonmovant.  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

## B.    Legal Framework

The Company alleges that Alco's transmission of unsolicited faxes to the Company and others similarly situated violated the TCPA,  47 U.S.C. § 227.  The TCPA makes it unlawful to "use any telephone facsimile machine, computer, or other device,

to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. §
227(b)(1)©.  The Federal Communications Commission ("FCC") has promulgated
regulations implementing the TCPA junk fax provisions.  Those regulations define a
"sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement
is sent or whose goods or services are advertised or promoted in the unsolicited
advertisement."  47 C.F.R. § 64.1200(f)(10).

> ### C.  Whether Alco is Strictly Liable as the "Sender" of the Faxes

The Company maintains that Alco is primarily liable as the "sender" of the faxes
at issue, because Alco's services are the subject of the advertisements.  According to
the Company, the evidence shows that the advertisements promoted Alco's services
and were faxed by B2B/Macaw on Alco's behalf.  The Company contends that:

> Defendant's argument that it cannot be primarily liable for the fax ads because
> B2B physically sent the ads is wrong as a matter of law.  Primary liability under
> the TCPA's junk fax provision attaches to the advertiser or to the person on
> whose behalf the faxes are sent.  A physical link is not required to make the
> advertiser a "sender."

(Plaintiff's Opposition at 5, Doc. No. 50 at 5.)

Alco maintains that it is not directly or strictly liable for B2B's acts of sending the
unsolicited faxes despite the fact that the faxes advertised Alco's services.  In making this
argument, Alco relies on an order issued by the FCC in May 2013 in which the FCC
rejected strict liability when considering whether a defendant could be held liable when a
third-party, independent contractor engages in conduct prohibited by the TCPA.  *See In
the Matter of the Joint Petition Filed by Dish Network, LLC et. al.*, 28 F.C.C. Rcd. 6574,
6593, fn. 140 (2013) (hereafter "*Dish Network*").  There, the FCC elaborated on the scope
of vicarious liability under sections 227(b) and © of the TCPA.

-8-

In *Dish Network*, three petitioners (including Dish Network, against which TCPA claims were alleged) sought an FCC ruling as to whether the TCPA created liability for a seller as a result of unlawful telemarketing calls made by the seller's third-party retailers and not physically placed by the seller itself.  *Id.* at 6578.  Under section 227(b)(1)(B) of the TCPA, which addresses telemarketing, a party must "initiate" a telephone call to be liable under that section.  The FCC requested public comment on the issue and asked what legal principles should be used to define "on behalf of" liability for a seller under the TCPA.  *Id.* at 6578-79.  Some parties took the position that a telemarketing call plainly is made "on behalf of" a seller within the meaning of the TCPA if it is made "in the interest of" or "for the benefit of" the seller, making proof of an agency relationship between the seller and third party unnecessary.  *Id.* at 6579.  In contrast, Dish Network suggested that federal common law principles of agency should be employed to determine when TCPA liability may be imposed on parties that do not actually place the telemarketing calls.  *Id.* at 6580.

Examining its current regulations and administrative precedent interpreting and implementing sections 227(b) and 227©, the FCC concluded: "[W]e do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section [sic] either section 227© or section 227(b)."  *Id.* at 6593.  Although it rejected direct liability of the seller for calls initiated by a third party, the FCC held that a seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227© that are committed by third-party telemarketers."  *Id.* at 6574.   The FCC explained that

-9-

a seller may be liable for violations by its representatives under a broad range of agency principles, including formal agency, apparent authority, and ratification.  *Id.* at 6584.

Despite the FCC's ruling in *Dish Network,* the Company urges this Court to impose strict liability on all persons or entities whose goods are advertised in an unsolicited fax, maintaining that Alco is primarily liable as the "sender" of the faxes notwithstanding its use of a fax broadcaster to physically send the faxes.  The Company contends that Alco's reliance on *Dish Network* is misplaced, because "*Dish Network* was primarily focused on the TCPA's *telemarketing* regulations and not its junk faxing provisions."  (Plaintiff's Opposition at 7, Doc. No. 50 at 7) (emphasis in original).  This Court disagrees with the Company's position, finding that the *Dish Network* ruling is not confined to the telemarketing context.  *Dish Network* discusses the availability of common law agency principles for violations of the "prohibitions" of section 227(b)–which include the prohibition on sending unsolicited faxes.[1]  28 F.C.C. Rcd. at 6587.  Given the broad language of *Dish Network* regarding violations of section 227(b), this Court is persuaded to join those other federal courts that have found the ruling applicable to cases involving unsolicited faxes sent by third party fax broadcasters.  *See, e.g., Palm Beach Golf Center-Boca, Inc. v. Sarris,* No. 12-80178-CIV, 2013 WL 5972173, at *6 (S.D. Fla. October 22, 2013)* ("In the fax transmission

---

[1]    *Dish Network* specifically provides: "While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA."  28 F.C.C. Rcd. at 6587.

-10-

context, *Dish Network* stands for the proposition that a party is not directly liable for a TCPA violation unless it actually transmits a fax, but the party may be vicariously liable under federal common law principles of agency for the actions of a third party.")*;* *Savanna Group, Inc. v. Trynex, Inc.,* No. 10 C 7995, 2013 WL 4734004, at \*5 (N.D. Ill. Sept. 3, 2013) ("Given the substantial similarity between the definitions of 'seller' and 'sender' and the broad language of the ruling concerning violations of § 227(b), the [*Dish Network*] ruling is controlling in this case); *Bridgeview Health Care Center Ltd. v. Clark,* No. 09-cv-05601, 2013 WL 4495221 (N.D. Ill. Aug. 21, 2013) (applying *Dish Network* to the context of unsolicited facsimiles, finding that a seller is not liable for faxes sent by a third party if the agent exceeds the authority granted to it).[2]  Moreover, as Alco notes in its Reply to Plaintiff's Opposition, the Company has already argued in the instant case – as part of its Reply Memorandum in Support of Class Certification filed on November 14, 2013 – that the FCC's ruling in *Dish Network* is binding on this Court.  (*See* Doc. No. 48 at 4).  Thus, the Company has not only conceded that *Dish Network* applies to fax advertising cases, but also contends that the ruling is binding precedent.  (*Id.*)

Accordingly, Alco is not strictly liable for B2B's acts of physically sending the faxes at issue, despite the undisputed fact that the fax advertisements promoted Alco's services.  Based on the FCC's *Dish Network* ruling, however, Alco could be held vicariously liable for violations of the TCPA under a broad range of federal common law principles of agency.

---

[2]     *Palm Beach, Savanna Group,* and *Bridgeview* all involve fax broadcasts by B2B/Macaw.

-11-

**D.      Whether the Company Properly Pleaded Vicarious Liability**

In its motion, Alco argues that it is entitled to summary judgment on the

Company's TCPA claim, because it is undisputed that Alco did not physically transmit

any unsolicited fax advertisements, and the Company failed to make any allegations of

vicarious liability in its complaint.  (Summary Judgment Motion at 13, Doc. No. 43 at

13.)  Alco contends that the Company cannot now rely on vicarious liability theories to

oppose Alco's motion for summary judgment, because the Company failed to plead

those theories.  (*Id.*, citing *Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996);

*Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714 (E.D. Mich. 2003); *Hexion Specialty

Chemicals, Inc. v. Oak-Bark Corp.*, 7:09-CV-105-D, 2011 WL 4527382 (E.D.N.C. Sept.

28, 2011).)

 In response, the Company maintains its position that Alco is primarily liable

under the TCPA's junk fax provisions, and therefore vicarious liability need not have

been pled.  (Plaintiff's Opposition at 6, Doc. No. 50 at 6.)  According to the Company,

the FCC defined "sender" for purposes of a TCPA violation as the person on whose

behalf a broadcaster sends a fax, therefore the Company's right of action arises directly

from the provisions of the TCPA and not common law principles of agency.  (*Id.*) As

discussed above, however, the FCC, in its *Dish Network* ruling, rejected the notion that

a party is directly liable for a TCPA violation even if it did not actually transmit a fax, and

this Court finds that ruling applicable here.

Since it is undisputed that B2B/Macaw–not Alco–transmitted the alleged faxes at

issue, Alco can only be held liable under the TCPA if it can be shown that Alco is

-12-

vicariously liable for B2B/Macaw's acts. If a plaintiff's theory of recovery is premised upon vicarious liability, however, vicarious liability must be alleged in the complaint. *See Schaffer by Schaffer v. A.O. Smith Harvestore Products, Inc.,* 74 F.3d 722 (6th Cir. 1996) (granting summary judgment for defendant upon plaintiff's failure to allege a theory of vicarious liability linking defendant to the acts alleged in the complaint). Furthermore, as Alco correctly noted in its motion, a plaintiff "may not amend his complaint through arguments in his brief in opposition to motion for summary judgment." *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996).

Here, the Company alleges in its complaint that "Defendant transmitted by telephone facsimile machine an unsolicited fax to Plaintiff." (Plaintiff's Complaint at 2, Doc. No. 1 at 2.)[3] The Company does not name B2B or Macaw in the complaint, nor does it name either as a party to this matter. The facts are undisputed, however, that the alleged faxes at issue were sent by B2B/Macaw, not Alco, and Plaintiff has conceded this. (Plaintiff's Opposition at 2, Doc. No. 50 at 2 (admitting that "Defendant hired the fax broadcaster Business to Business Solutions ('B2B') to physically send the

---

[3]     Plaintiff notes in its Opposition that "even though it is not required, Plaintiff explicitly pled that the fax advertisement was sent by *or* 'on behalf of' Defendant. *See,* Doc. 1, p. 3, ¶ 12." (Plaintiff's Opposition at 3, ¶ 12) (emphasis in original). Plaintiff further stresses the following language it included in the complaint: "The Defendant knew or should have known that . . . the Plaintiff and the other class members had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services. . . ." (*Id.* at 7, ¶ 30.) Plaintiff purports to argue that by including the aforementioned paragraphs in the complaint, Plaintiff sufficiently plead a theory of vicarious liability. This Court disagrees. Without any further explanation, Plaintiff's use of language alluding to the fact that another entity other than Defendant physically sent the faxes does not amount to a sufficient pleading of vicarious liability.

-13-

faxes.")) As a result, the only theory of liability supported by the facts is vicarious liability, which the Company failed to plead and raised only in its opposition to Defendant's summary judgment motion. At the summary judgment stage, this defect is fatal, s*ee Schaffer by Schaffer*, 74 F.3d at 731, and it is unreasonable to expect Plaintiff to amend its complaint at this juncture.

### E.    Whether There is a Disputed Issue of Fact as to Whether Alco is Vicariously Liable for B2B's Acts

Even if the Court assumes that the Company had plead a theory of vicarious liability, there is insufficient evidence to support a finding that Alco is liable for violations of the TCPA pursuant to vicarious liability principles. In its response to Alco's motion, the Company argues–for the first time–that even if Alco cannot be held directly liable for the faxes transmitted by B2B, there is a disputed issue of fact as to whether Alco is vicariously liable under federal common law principles of agency. Alco, however, details the undisputed facts establishing that Alco is entitled to summary judgment on all three theories of vicarious liability: formal agency, apparent authority, and ratification. This Court agrees that Plaintiff has failed to establish that a genuine issue of material fact exists as to whether Alco is vicariously liable for B2B's sending of unsolicited faxes to the Company and others similarly situated.

#### 1.    Formal Agency

An agency relationship arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on behalf of the principal and subject to the principal's control. *See* Restatement (Third) of Agency § 1.01. A principal may be vicariously liable for the acts of its agent if the principal expressly or implicitly

-14-

authorized the agent's conduct.  *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).

Here, it is undisputed that Alco contracted with B2B to send faxes advertising Alco's services.  Undisputed facts also show, however, that Alco only authorized B2B to send faxes to businesses that had consented to receive the faxes and that had an established business relationship with B2B.  Alco's former President, Richard Gajdos, testified that B2B/Macaw representative Kevin Wilson assured him that B2B would only send faxes to persons on B2B's client list and who had authorized B2B to send the fax advertisements.  (Gajdos Dep. at 23-24, Doc. No. 43-1 at 6.)  According to Gajdos, during his discussions with Wilson regarding the faxing campaigns, Wilson stated that B2B "had a relationship with all of the clients on their list," and that B2B "had their authorization to send a fax."  (*Id.* at 34.)  Gajdos also testified that Wilson assured him that the faxes to be sent were "100 percent legal and that [B2B] had a full and open relationship with all the faxes they were sending out."  (*Id.* at 25-26.)

Furthermore, consistent with Wilson's representations to Gajdos, B2B/Macaw repeatedly assured Alco that faxes would only be sent to persons who gave permission to receive them.  For example, after learning that Alco had received a complaint from an attorney representing a fax recipient, B2B provided Alco with a letter addressed to the attorney, which provided in part: "Someone using the business phone of fax recipients supplied the fax number and permission to send faxes.  Moreover, they did not request that we discontinue sending faxes despite our sending at least two previous faxes offering opportunities to do so using the toll free 'Remove' number."  (Exhibit Letter to Robert Willis B2B65-67, Doc. No. 43-2 at 2.)  The letter also stated that "[o]ur

-15-

faxes clearly affirm that we, not an advertiser, are solely responsible for the contents and destinations of faxes." (*Id.* at 1.)  These facts confirm that Alco granted B2B the authority to send fax advertisements *only to recipients who had consented to receiving the faxes*.  Thus, B2B exceeded the scope of its authority as Alco's agent when it sent unsolicited faxes.

Because undisputed facts show that Alco did not authorize B2B to send illegal faxes, and B2B exceeded the scope of its authority in doing so, the Company cannot successfully rely on a theory of *respondeat superior* to show that Alco is vicariously liable for B2B's acts.  Under this theory of liability, "a principal is only held vicariously liable for torts committed by an agent when the agent acts for the benefit of his principal *within the scope of his employment*." *Jones*, 144 F.3d at 965 (emphasis added).  Here, while Alco gave B2B permission to send faxes benefitting Alco's business to those who consented, B2B never expressly or impliedly authorized B2B to send *unsolicited* fax advertisements.  Accordingly, Alco is not vicariously liable under a theory of *respondeat superior*, because B2B acted outside the scope of its employment.  *See, e.g., Uesco Indus., Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, 993 N.E. 2d 97 *appeal denied*, 996 N.E.2d 24 (Ill. 2013) (holding that a business was not vicariously liable under the TCPA for faxes sent by B2B when B2B exceeded the scope of its authority by sending faxes to persons or companies other than those to whom the business had requested).

Notably, the Company does not dispute that Alco had authorized B2B to engage only in *legal* faxing.  Instead, the Company argues in its opposition that any agreement

or restriction between Alco and B2B to engage in only legal fax advertising was unknown to the Company or any of the putative class members and therefore cannot absolve Alco from liability.  (Plaintiff's Opposition at 12, Doc. No. 50 at 12.)  In making this argument, the Company relies on a footnote from the *Dish Network* ruling explaining that "secret" arrangements which purport to limit an agent's authority but are known only to the agent and principal do not absolve the principal of TCPA liability:

> "'Restrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations' with others." [Restatement (Third) of Agency § 2.03, cmt. c.]  In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

28 F.C.C. Rcd. at 6586, n. 102.  Clearly, this case addresses *apparent* authority, not actual authority.  Accordingly, it will be addressed in the next section.

Moreover, as Alco correctly notes in its motion, *respondeat superior* liability is applicable to the relation of principal and agent, but it does not apply to the relationship between an employer and independent contractor.  *See Wellman v. Montes,* 288 F. Supp. 2d 860, 866 (N.D. Ohio 2003), citing *Councell v. Douglas,* 163 Ohio St. 292, 295, 126 N.E.2d 597 (1955).  Under Ohio law, "an independent contractor relationship exists when the contractor controls the manner and means of the work, and the contractor is responsible for the end result."  *Id.,* citing *Conway v. Calbert,* 119 Ohio App. 3d 288, 290, 695 N.E.2d 271, 272 (Ohio Ct. App. 1997).

Alco argues that undisputed facts demonstrate that B2B/Macaw is an independent contractor of Alco rather than an employee.  (Summary Judgment Motion

-17-

at 17, Doc. No. 43 at 17.)  According to Alco, it did not exercise any control over the

method, manner, or means of the fax broadcasts by B2B:  B2B/Macaw used its own

equipment and employees to perform the broadcasts, selected the fax targets and did

not inform Alco of where or to whom the faxes were being sent, and acted directly

contrary to its authority by sending unsolicited fax advertisements.  (*Id.*)  Alco also

introduced case law establishing that liability for a third party's violation of the TCPA

cannot be premised merely on the entity's payment of the third party for the

advertisements.  (*Id.* at 19, citing *Zernsen v. PT Ins. Grp.*, 2012 WL 5936286 (N.D. Ill.

Nov. 27, 2012) (holding that defendant was not liable as a matter of law for faxes sent

by a third party even though the defendant issued a check to the third party in payment

of the fax broadcast.  This one fact did not establish a "high degree of involvement" by

the defendant in the fax campaign.);  *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079,

1085 (C.D. Cal. 2012) ("Mere approval and funds administration cannot be equated with

control over the manner and means by which the campaign was designed and

executed.").)  Alco encourages this Court to determinate that, based on these facts,

Alco and B2B had an employer-independent contractor relationship as a matter of law.

(*Id.* at 18.)

The Company, on the other hand, does not specifically address the issue of

whether B2B was an employee or independent contractor of Alco.  The Company does,

however, note that evidence shows Alco worked closely with B2B to create and design

the fax advertisements and paid B2B by check to send out two separate fax blasts.

(Plaintiff's Opposition at 11, Doc. No. 50 at 11.)  These facts alone, however, are not

sufficient to raise a genuine question of whether B2B was an employee of Alco rather

-18-

than an independent contractor.  As a result, the Company has not shown that there is a dispute of fact as to whether Alco can be vicariously liable for B2B's TCPA violations under a theory of *respondeat superior.*

For all of the foregoing reasons, Alco is entitled to summary judgment on any claims based upon formal agency or *respondeat superior* theories of vicarious liability.

### 2.    Apparent Authority

As the FCC concluded in its *Dish Network* ruling, a seller may be liable for violations by its representatives under a broad range of agency principles, including apparent authority.  *See* 28 F.C.C. Rcd. at 6548.  Under an apparent authority theory, a principal may be vicariously liable for an agent's tortious conduct if "the principal cloaked its agent with apparent authority, *i.e.*, held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance on the apparent authority."  *Jones*, 144 F.3d at 965 (citations omitted).  Under Ohio law, to bind a principal on the basis of apparent authority, it must be shown that:

> 1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and
>
> 2) the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent: a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts of conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority.

*Orchard Grp. v. Konica Med. Corp.*, 135 F.3d 421, 425 (6th Cir. 1998), citing *Master Consol. Corp. v. BancOhio Nat'l. Bank*, 61 Ohio St. 3d 570, 576-577, 575 N.E.2d 817,

822 (1991).

Here, the undisputed facts cannot support a claim of apparent authority liability, because the Company cannot show that it relied on an apparent agency relationship or suffered any harm as a result of the appearance of such a relationship. As Alco correctly notes in its motion, "Plaintiff did not learn of, let alone act in reliance on, B2B's appearance of authority until after allegedly suffering the harm at issue–receipt of the faxes." (Summary Judgment Motion at 21, Doc. No. 43 at 21.) Thus, the Company cannot show that it detrimentally changed its position based on any apparent authority by B2B to act on behalf of Alco. To the contrary, the Company suffered the harm at issue–receipt of the unsolicited faxes–prior to learning any facts suggesting that Alco held B2B out as having authority to send the faxes.

Furthermore, at least one of the faxes the Company allegedly received specifically stated:

> This message is the exclusive property of Macaw, SRL, 46 Match Factory St, Sec 5, Buc, Rom, 050183, 40723294564, which is solely responsible for its contents and destinations.

(Plaintiff's Complaint at 2, Doc. No. 1-1 at 2.) Thus, the fax on its face gave the Company reason to suspect that it was not transmitted by Alco, further contradicting any contention by the Company that it detrimentally relied on B2B/Macaw's appearance of authority. Accordingly, the Company cannot rely on a theory of apparent authority to hold Alco vicariously liable for B2B's sending of unsolicited fax advertisements, and Alco is entitled to summary judgment on any claims based upon this theory.

### 3. Ratification

A principal may be liable for the unauthorized acts of an agent if the principal

-20-

ratifies or affirms the unauthorized act.  "Failure to repudiate an unauthorized agreement and accepting the benefits of such an agreement can constitute a ratification." *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986), citing Restatement (Second) of Agency §§ 94, 98 (1958).  One essential prerequisite to a principal's ratification of an unauthorized act, however, is that the principal *have knowledge of all material facts at  the time of the ratification*. *Id.* (citations omitted).

Here, Plaintiff cannot rely on ratification to establish Alco's vicarious liability, because Alco did not have knowledge of all material facts surrounding the fax campaigns.  As Alco argues, and the Company fails to challenge, undisputed evidence demonstrates that Alco never ratified B2B's decision to send unsolicited fax advertisements.  B2B consistently assured Alco that all of the faxes sent were to persons who had consented to receive them.  (Gajdos Dep. at 23-24, Doc. No. 43-1 at 6.)  Indeed, the faxes allegedly sent to the Company–which were seen and approved by Alco–specifically stated: "We will only send faxes to parties who wish to receive them." (Plaintiff's Complaint at 2, Doc. No. 1-1 at 2.)   Furthermore, B2B provided Alco with a "To Whom It May Concern" letter which provided, in part, that "[s]omeone using the business phone of fax recipients supplied the fax number and permission to send faxes."  (Exhibit Vasile Adrian To Whom It May Concern Letter B2B70, Doc. No. 43-10.) B2B even offered to pay Alco for any successful claims asserted against Alco as a result of the fax transmissions.  (Exhibit Adrian Letter to Gajdos B2B50, Doc. No 43-9.) These undisputed facts demonstrate that Alco was not fully informed of the material

facts surrounding B2B's actions, and Plaintiff has offered no evidence to the contrary.

Furthermore, undisputed facts show that Alco never ratified B2B's sending of unsolicited faxes.  The evidence presented by Alco and unchallenged by the Company indicates that when Alco received complaints from fax recipients, Alco immediately contacted B2B and asked that it handle the claims and defend and indemnify Alco. (*See, e.g.,* Exhibit Robert Willis Letter March 20, 2006, Doc. No. 43-11; Exhibit Joseph Campoli Letter April 25, 2006, Doc. No. 43-12; Exhibit Robert Willis Letter July 21, 2006, Doc. No. 43-13.)  Thus, Alco's actions more likely represent *repudiation* of B2B's conduct rather than ratification.  Accordingly, even if the Company had made an argument based on a theory of ratification, such argument would fail.  Summary judgment is thus granted for Alco on any claims based upon a theory of ratification.

## III.

In addition to its federal TCPA claim (Count I), Plaintiff's complaint alleges a state law conversion claim (Count II).  Neither party has addressed the conversion claim in summary judgment briefing.  Nonetheless, because Plaintiff alleges subject matter jurisdiction based solely on federal question jurisdiction, 28 U.S.C. § 1331 (Plaintiff's Complaint, Doc. No. 1 at 2), making Plaintiff's state law conversion claim supplemental, the Magistrate Judge recommends that the Court decline to exercise jurisdiction over the conversion count of Plaintiff's complaint (Count II) and dismiss the TCPA claim (Count I) with prejudice.

## IV.

For the foregoing reasons, the Magistrate Judge recommends that Defendant's

motion for summary judgment be GRANTED.


                                          s/ *Nancy A. Vecchiarelli*
                                          U.S. MAGISTRATE JUDGE


Date: February 6, 2014

## OBJECTIONS

        Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  **28 U.S.C. § 636(b)(1)**.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See **United States v. Walters**, **638 F.2d 947 (6th Cir. 1981)**; **Thomas v. Arn**, **474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)***.